1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARLENE SANDERS and KEN McDANIEL, | ) ) ) | CIV-F 04-5541 AWI TAG |
| Plaintiffs, | ) ) | ORDER RE: INTERLOCUTORY APPELLATE CERTIFICATION |
| v. | ) ) ) | |
| CITY OF BAKERSFIELD, BAKERSFIELD POLICE DEPARTMENT, ERIC MATLOCK, GLEN DAVIS, SCOTT THATCHER and DOES 1 through 10, inclusive, sued both in their individual and official capacities | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiffs have made a motion for interlocutory appellate certification pursuant to 28 U.S.C. § 1292(b). Docs. 69 and 70. Defendants have filed an opposition and Plaintiffs have filed a reply. Docs. 71 and 73. The matter was taken under submission without oral argument. Doc. 74.

## I. History

Plaintiffs in this case are Arlene Sanders and Ken McDaniel, who resided at 1905 California Street, Apt. #18; Bakersfield, CA in April 1999. Defendants are the City of Bakersfield , the Bakersfield Police Department ("BPD"), Eric Matlock (Chief of BPD), Glenn Davis (BPD officer), Scott Thatcher (BPD Officer), and Does 1 through 10, inclusive (additional

1

1   BPD officers).  On the evening of April 6, 1999, Davis and Thatcher responded to a report of a
2   disturbance at Plaintiffs' apartment complex.  At the scene, the apartment manager stated that
3   there was a fight going on inside Plaintiffs' unit.  As Davis and Thatcher approached the unit,
4   they heard loud shouting.  They knocked on the door and identified themselves as BPD officers.
5   Sanders opened the door, revealing both herself and McDaniel in the living room; Davis and
6   Thatcher entered.  They noticed that Sanders had an abrasion on her cheek and McDaniel put
7   something behind the couch.  Sanders demanded the officers leave and began shouting.  Davis
8   and McDaniel used force to handcuff both Plaintiffs.  Davis conducted a sweep of the whole
9   apartment.  Davis found plastic bags containing what appeared to be cocaine in the right shoe of
10  a pair of work boots in a bedroom closet; the door to the closet was open.  Davis asked McDaniel
11  if he was on parole; McDaniel affirmed he was on parole for a drug violation.  He contacted the
12  BPD to request a team to conduct a full search of the apartment.  BPD officers soon arrived and
13  seized the bags of cocaine in the course of a second search of the apartment.  Defendants also
14  claim that Davis and Thatcher were informed by another BPD officer, Orbin Love, on April 5,
15  1999 (the day before the arrests and searches) that McDaniel was a parolee who was suspected of
16  dealing drugs; Plaintiffs dispute the claim.

17          Plaintiffs were charged with possession for sale of cocaine base in violation of California
18  Health and Safety Code § 11351.5 on May 17, 1999.  Plaintiffs plead guilty.  Before their plea,
19  they filed motions to suppress evidence pursuant to Cal. Penal Code § 1538.5, arguing the initial
20  search violated their Fourth Amendment rights.  The motion was denied, but the Fifth District
21  Court of Appeal reversed the denial on two bases: the search extended beyond adjoining spaces
22  and a parole search is only valid when the officer is aware of the search condition.  People v.
23  Sanders, 84 Cal. App. 4th 1211, 1220 and 1223 (Cal. Ct. App. 2000).  On review, the California
24  Supreme Court affirmed the Fifth District Court of Appeal on the parole search while expressing
25  no opinion as to the protective sweep.  People v. Sanders, 31 Cal. 4th 318, 324 n.2 (Cal. 2003).
26  The California Supreme Court firmly held that when police are unaware an individual is subject
27  to a search condition, a search without probable cause constitutes a violation of the Fourth
28  Amendment and can not be justified after the fact by the search condition.

1    On April 8, 2004, Plaintiffs filed this present suit.  Broadly, Plaintiffs allege their Fourth

2    Amendment rights were violated by entry into their apartment and search without consent or

3    exigent circumstances.  The parties filed opposing motions for summary adjudication.  By Order

4    of September 30, 2005, the court determined "The initial entry of Officers Davis and Thatcher on

5    April 6, 1999 did not violate Plaintiffs' Fourth Amendment rights....Whether the [initial search]

6    can be justified as a protective sweep incident to arrest is preserved for trial as the questions of

7    arrest and plain view have not been fully addressed." Doc. 53, Order, at 39:22-28.  Defendants

8    shortly thereafter filed a motion for reconsideration. Doc. 56.  The motion was eventually denied.

9    Doc. 59.  Defendants made a second motion for summary judgment, which was also denied.

10   Docs. 60 and 63.  Plaintiffs have now made a motion to have the September 30, 2005 Order

11   certified for interlocutory appeal. Docs. 69 and 70.  They raise three questions: (1)whether the

12   court should have addressed issue preclusion against the City or BPD as distinct from the

13   individual officers; (2) whether the court erred in finding the individual officers lacked any

14   financial stake in the criminal proceedings; and (3) whether the court erred in finding the

15   individual officers' awareness or ignorance of McDaniel's parole condition a disputed issue

16   based on the declaration of Officer Orbin Love (who is not a party in this case).

## II. Legal Standards

19   Title 28 U.S.C. § 1292(b) provides that:

> When a district judge, in making in a civil action an order not otherwise
> appealable under this section, shall be of the opinion that such order involves a
> controlling question of law as to which there is substantial ground for difference
> of opinion and that an immediate appeal from the order may materially advance
> the ultimate termination of the litigation, he shall so state in writing in such order.
> The Court of Appeals which would have jurisdiction of an appeal of such action
> may thereupon, in its discretion, permit an appeal to be taken from such order, if
> application is made to it within ten days after the entry of the order: *Provided,*
> *however*, that application for an appeal hereunder shall not stay proceedings in the
> district court unless the district judge or the Court of Appeals or a judge thereof
> shall so order.

26   The court cannot be compelled to certify an order or an issue under section 1292(b) and the

27   court's refusal to certify an order under this statute is not appealable. See Green v. Occidental

28   Petroleum Corp., 541 F.2d 1335, 1338 (9th Cir. 1976); Oppenheimer v. Los Angeles County

1   Flood Control Dist., 453 F.2d 895, 895 (9th Cir. 1972).   The Ninth Circuit has listed the

2   requirements for certification as: (1) a controlling question of law; (2) substantial grounds for

3   difference of opinion; and (3) immediate appeal may materially advance the ultimate termination

4   of the litigation.  In re Cement Antitrust Litigation, 673 F.2d 1020, 1026 (9th Cir. 1982).  Overall,

5   Congressional legislative history "indicates that [interlocutory appeal] was to be used only in

6   extraordinary cases where decision of an interlocutory appeal might avoid protracted and

7   expensive litigation. It was not intended merely to provide review of difficult rulings in hard

8   cases."  United States Rubber Co. v. Wright, 359 F.2d 784, 785 (9th Cir. 1966).

9

10                                         **III. Discussion**

11           What constitutes a controlling question of law is not absolutely clear.  The issue need not

12   be "dispositive of the lawsuit in order to be regarded as controlling" but it cannot be "collateral to

13   the basic issues of [the] case."  United States v. Woodbury, 263 F.2d 784, 787-88 (9th Cir. 1959).

14   The Ninth Circuit has cited approvingly to the Third Circuit's finding that "at the very least, a

15   controlling question of law must encompass 'every order which, if erroneous, would be

16   reversible error on final appeal.'"  In re Cement Antitrust Litigation, 673 F.2d 1020, 1026 (9th

17   Cir. 1982), citing Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3rd Cir. 1974).  In this case,

18   the key issues for which interlocutory appeal is being sought concern the application of issue

19   preclusion.  These issues are legal questions and not factual in nature.  If the court's conclusions

20   are wrong, they would likely constitute reversible error.  As such, the issue is controlling as

21   defined in Katz.

22           As the September 30, 2005 order indicated, this is an issue of state law and there is no

23   clear answer to privity in California jurisprudence.  The Ninth Circuit has addressed this issue

24   many years ago, but the standard under which that panel reached its conclusion is unclear. See

25   Davis v. Eide, 439 F.2d 1077, 1078 (9th Cir. 1971).  Other circuits have addressed this issue with

26   reference to various states' laws and have come to a general conclusion that privity does not exist

27   in these circumstances.  A clear statement by the Ninth Circuit on this issue would be most

28   helpful.  A reversal by the Ninth Circuit would greatly speed the resolution of this case as it

                                              **4**

1 would establish several key factual and legal findings.  A large part of the case would be avoided.

2      Plaintiffs have not asked for a stay of the case in conjunction with his request for

3 interlocutory appeal.  The court declines to independently issue such a stay when the Ninth

4 Circuit has not yet decided whether to entertain the interlocutory appeal.

5

6                                         **IV. Conclusion**

7      Plaintiffs' motion is GRANTED.  The September 30, 2005 order is certified for

8 interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

9

10 IT IS SO ORDERED.

11 **Dated:    November 1, 2007           /s/ Anthony W. Ishii**
                                   UNITED STATES DISTRICT JUDGE