UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARLENE SANDERS and KEN McDANIEL,<br><br>                Plaintiffs,<br><br>    v.<br><br>CITY OF BAKERSFIELD, BAKERSFIELD POLICE DEPARTMENT, ERIC MATLOCK, GLEN DAVIS, SCOTT THATCHER and DOES 1 through 10, inclusive, sued both in their individual and official capacities<br><br>                Defendants. | CIV-F 04-5541 AWI BAK<br><br>ORDER RE: PLAINTIFFS' MOTION FOR RECONSIDERATION |

**I. History**

Plaintiffs in this case are Arlene Sanders and Ken McDaniel, who resided at 1905 California Street, Apt. #18; Bakersfield, CA in April 1999. Defendants are the City of Bakersfield, the Bakersfield Police Department ("BPD"), Eric Matlock (Chief of BPD), Glenn Davis (BPD officer), Scott Thatcher (BPD Officer), and Does 1 through 10, inclusive (additional BPD officers). On the evening of April 6, 1999, Davis and Thatcher responded to a report of a disturbance at Plaintiffs' apartment complex. At the scene, the apartment manager stated that there was a fight going on inside Plaintiffs' unit. As Davis and Thatcher approached the unit, they heard loud shouting. They knocked on the door and identified themselves as BPD officers. Sanders opened the door, revealing both herself and McDaniel in the living room; Davis and

1  Thatcher entered.  They noticed that Sanders had an abrasion on her cheek and McDaniel put
2  something behind the couch.  Sanders demanded the officers leave and began shouting.  Davis
3  and McDaniel used force to handcuff both Plaintiffs.  Davis conducted a sweep of the whole
4  apartment ("First Search").  Davis found plastic bags containing what appeared to be cocaine in
5  the right shoe of a pair of work boots in a bedroom closet; the door to the closet was open.  Davis
6  asked McDaniel if he was on parole; McDaniel affirmed he was on parole for a drug violation.
7  He contacted the BPD to request a team to conduct a full search of the apartment.  BPD officers
8  soon arrived and seized the bags of cocaine in the course of a second search of the apartment.
9  Defendants also claim that Davis and Thatcher were informed by another BPD officer, Orbin
10  Love, on April 5, 1999 (the day before the arrests and searches) that McDaniel was a parolee who
11  was suspected of dealing drugs; Plaintiffs dispute the claim.
12      Plaintiffs were charged with possession for sale of cocaine base in violation of California
13  Health and Safety Code § 11351.5 on May 17, 1999.  Plaintiffs plead guilty.  Before their plea,
14  they filed motions to suppress evidence pursuant to Cal. Penal Code § 1538.5, arguing the initial
15  search violated their Fourth Amendment rights.  The motion was denied, but the Fifth District
16  Court of Appeal reversed the denial on two bases: the search extended beyond adjoining spaces
17  and a parole search is only valid when the officer is aware of the search condition.  People v.
18  Sanders, 84 Cal. App. 4th 1211, 1220 and 1223 (Cal. Ct. App. 2000).  On review, the California
19  Supreme Court affirmed the Fifth District Court of Appeal on the parole search while expressing
20  no opinion as to the protective sweep.  People v. Sanders, 31 Cal. 4th 318, 324 n.2 (Cal. 2003).
21  The California Supreme Court firmly held that when police are unaware an individual is subject
22  to a search condition, a search without probable cause constitutes a violation of the Fourth
23  Amendment and can not be justified after the fact by the search condition.
24      On April 8, 2004, Plaintiffs filed this present suit.  Broadly, Plaintiffs allege their Fourth
25  Amendment rights were violated by entry into their apartment and search without consent or
26  exigent circumstances.  The parties filed opposing motions for summary adjudication.  By Order
27  of September 30, 2005, the court determined "The initial entry of Officers Davis and Thatcher on
28  April 6, 1999 did not violate Plaintiffs' Fourth Amendment rights....Whether the [initial search]

can be justified as a protective sweep incident to arrest is preserved for trial as the questions of arrest and plain view have not been fully addressed." Doc. 53, Order, at 39:22-28.  The parties thereafter filed three motions for reconsideration.  Plaintiff also filed a motion for interlocutory appellate certification which was granted.  Ultimately, Plaintiff did not file the appeal with the Ninth Circuit.  Plaintiffs now makes a fourth motion for reconsideration.  Defendants oppose the motion.  The matter was taken under submission without oral argument.

## II. Legal Standards

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. There may also be other, highly unusual, circumstances warranting reconsideration." School Dist. No. 1J Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993), citations omitted.

## III. Discussion

In the summary judgment order, the court granted summary adjudication on the issue of adjoining spaces in the context of protective sweeps, finding "The bedroom closet in which the evidence was found constitutes an adjoining space." Doc. 53, September 30, 2005 Order, at 39:25-26.  Plaintiffs seek reconsideration based on new U.S. Supreme Court precedent in Arizona v. Gant, 129 S. Ct. 1710 (2009), asking the court to adjudicate that the bedroom closet is not an adjoining space.

In the original summary judgment order, the court found two rationales for protective sweeps: "These two cases demonstrate that protective sweeps are designed to prevent harm to police from two distinct sources: the arrestee using a weapon close at hand (Chimel) and an antagonistic third party located nearby (Buie). Defendants seek to justify the First Search as a protective sweep under Buie." Doc. 53, September 30, 2005 Order, at 28:14-17.  As far as can be determined, Defendants are not asserting that the First Search was conducted to make sure that Plaintiff McDaniel could not reach for a weapon close at hand.  In Buie, the U.S. Supreme Court

3

found

> as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene....
>
> We should emphasize that such a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises.

Maryland v. Buie, 494 U.S. 325, 334-36 (1990).  The court found that under the weight of case authority, the bedroom and its open closet were adjoining spaces due to the small size of the apartment.  The court did not grant summary adjudication in favor of Defendants overall because the facts that support probable cause for arrest were disputed.  As for the second part of the Buie formulation (search of additional spaces under articulable facts), the court analyzed the facts at hand and determined that summary adjudication on that alternate basis was not warranted either.  See Doc. 59, March 13, 2007 Order, at 7:19-25.

The new opinion in Gant does not change these conclusions.  The case is distinguishable as dealing solely with the concerns raised by Chimel and not those raised by Buie:

> After Rodney Gant was arrested for driving with a suspended license, handcuffed, and locked in the back of a patrol car, police officers searched his car and discovered cocaine in the pocket of a jacket on the backseat. Because Gant could not have accessed his car to retrieve weapons or evidence at the time of the search, the Arizona Supreme Court held that the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement, as defined in Chimel v. California, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), and applied to vehicle searches in New York v. Belton, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981), did not justify the search in this case. We agree with that conclusion.

Arizona v. Gant, 129 S. Ct. 1710, 1714 (2009).  Given the nature of space within a car, danger from hidden persons is not generally a concern.  The opinion specifically distinguishes Buie: "Finally, there may be still other circumstances in which safety or evidentiary interests would justify a search. Cf. Maryland v. Buie, 494 U.S. 325, 334, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990) (holding that, incident to arrest, an officer may conduct a limited protective sweep of those areas of a house in which he reasonably suspects a dangerous person may be hiding)."

4

1 | Arizona v. Gant, 129 S. Ct. 1710, 1721 (2009).

2 | As Defendants are not asserting that they conducted the First Search to prevent Plaintiffs from reaching for a weapon, there is no basis for granting reconsideration.

### IV. Conclusion

Plaintiffs' motion for reconsideration is DENIED.

IT IS SO ORDERED.

Dated:   October 13, 2009            /s/ Anthony W. Ishii
                                     CHIEF UNITED STATES DISTRICT JUDGE